**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

PINE TELEPHONE COMPANY, INC., an
Oklahoma corporation, and PINE
CELLULAR PHONES, INC., an Oklahoma
corporation,

              Plaintiffs,

v.

ALCATEL-LUCENT USA, INC., a
Delaware corporation, f/k/a ALCATEL
USA MARKETING, INC.,

              Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.  CIV-11-353-JHP

## ORDER AND OPINION

Before the Court are Defendant Alcatel-Lucent USA, Inc.'s Motion for Summary Judgment [Docket No. 166], Plaintiffs Pine Telephone Company, Inc. and Pine Cellular Phones Inc.'s Response in Opposition [Docket No. 182], Defendant's Reply [Docket No. 230] and Plaintiffs' Surreply [Docket No. 259].  Defendant moves for summary judgment on all claims alleged in Plaintiffs First Amended Petition; claims for fraudulent inducement, breach of contract and breach of warranty. Defendant also asserts that even if Plaintiffs have pled constructive or common law fraud, those claims are also subject to summary judgment.  Defendant argues alternatively for a limitation of damages under the controlling Agreement. Plaintiffs oppose summary judgment on all theories.

For the reasons set forth below, Defendant's Motion is GRANTED as to all claims.

## BACKGROUND

### A.    Undisputed Factual Background[1]

Plaintiffs, Pine Telephone Company, Inc. and Pine Cellular Phones, Inc. (collectively "Pine") are Oklahoma corporations engaged in the business of providing landline, cellular, cable television, and other telecommunications services to thousands of customers in Southeast Oklahoma for more than 100 years.  (First Am. Pet. ¶ 1, Dkt. No. 2).  Defendant, Alcatel-Lucent USA, Inc. ("Alcatel-Lucent"), is a Delaware corporation which sells telecommunications equipment and services.  (First Am. Pet. ¶ 2.)  This Court has diversity jurisdiction over the case pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds the sum of $75,000 and is between citizens of different states.  28 U.S.C. § 1332(a)(1) (2012).

In 2005, the parties entered into a Supply Agreement ("Agreement") to govern the sale by Alcatel-Lucent to Pine of telecommunications equipment, services, and licenses for firmware and software.  (First Am. Pet. ¶ 3; Supply Agreement ¶ 1.1, Ex. 1 to Alcatel-Lucent's Motion for Summary Judgment ("Alcatel-Lucent's Motion")). The Agreement was to serve as a Master Agreement for future purchases.  To purchase under the Agreement, Pine delivered to Alcatel-Lucent written purchase orders identifying the equipment, services, or software licenses it desired to purchase. (Agreement ¶ 2.1).   After entering into the Agreement, in 2005, Pine purchased equipment from Alcatel-Lucent.  (Alcatel-Lucent's Motion, ¶ 3).

In 2008, Pine expressed an interest in purchasing equipment and services to deploy a UMTS (3G) cellular network, with the focus on data services, to overlay its existing 2G system used for voice communications. (Alcatel-Lucent's Motion, ¶ 6).  Beginning in August 2008 and

---

[1] The following facts are either not specifically controverted in accordance with Local Civil Rule 56.1(c), or are described in the light most favorable to the non-moving party.  Immaterial facts are omitted.

2

continuing to December 15, 2008, Alcatel-Lucent provided proposals and quotes to Pine for the 3G system. (*Id.* at ¶ 7).

Alcatel-Lucent submitted a proposal and pricing for a "turn-key" solution under which Alcatel-Lucent would provide all equipment and services needed to deploy a full network. (*Id*. at ¶ 7). In furtherance of the process set forth in the Agreement, Pine issued purchase orders on December 15, 2008 for some of the equipment and services offered, but it did not purchase all of the offered equipment or services. In particular, Pine originally chose to use a router it already owned and elected to do its own installation of cell site equipment, its own cell site survey, and its own radio frequency engineering. (Alcatel-Lucent's Motion, ¶¶ 10-11; Pine's Objection and Response to Motion for Summary Judgment "Pine's Response," p. 7, ¶ 11). Pine does not dispute these facts except to state that what it purchased was a turn-key network solution subject only to Pine's obligation to perform certain limited installation tasks.  (Pine's Response, p. 6, ¶ 10).

The Project did not go as planned and resulted in the current litigation.  Pine wrote Alcatel-Lucent on January 12, 2011 stating that it was rejecting equipment because it "is not and does not function to promised capacity and operational specifications" and that numerous sites are "non-operational." Pine identified the individual pieces of purchased equipment that it was rejecting.  (Alcatel-Lucent's Motion, ¶ 14). The letter did not identify the claimed defects.  (Ex. 10 to Alcatel-Lucent's Motion).

Pine sues upon the Supply Agreement and does not dispute the provisions contained therein. (Pine's Response, p. 5, ¶ 1). The Supply Agreement contains the following provisions applicable to the current Motion:

- "Alcatel warrants that, for the applicable warranty period, (a) Equipment and Software media shall, under normal use and service, be free from defects in material and

3

workmanship, and (b) Equipment and Software shall materially conform to Alcatel's specifications therefor in effect on the date of shipment. However, Alcatel makes no warranty that any software will operate uninterrupted or error free . . . ." ¶¶ 7.1.

- "If any Equipment is not as warranted in this Article, then (a) Purchaser shall obtain from Alcatel a Material Return Authorization ("MRA") and return the Equipment and MRA to Alcatel's designated repair facility, and (b) Alcatel shall repair or replace the Equipment and return it to Purchaser's point of shipment. . . . If, after the exercise of commercially reasonable efforts by Alcatel to repair or replace any Equipment or correct any Software, Alcatel determines that the Product cannot be repaired, replaced or corrected, then Alcatel may, in its sole discretion, refund to Purchaser the Purchase Price of the Product, less a reasonable adjustment for beneficial use." ¶ 7.3.

- "NOTWITHSTANDING ANY PROVISION OF THIS AGREEMENT TO THE CONTRARY, THE PROVISIONS OF THIS ARTICLE CONSTITUTE PURCHASER'S SOLE REMEDY UNDER THIS AGREEMENT WITH RESPECT TO ANY DEFECTIVE PRODUCT, DOCUMENTATION OR SERVICES. EXCEPT AS OTHERWISE PROVIDED IN THIS ARTICLE, ALCATEL MAKES NO WARRANTY OF ANY KIND WITH RESPECT TO ANY PRODUCT, DOCUMENTATION OR SERVICES, AND ALCATEL DISCLAIMS ANY AND ALL IMPLIED WARRANTIES RELATING THERETO, INCLUDING, BUT NOT LIMITED TO, ANY AND ALL IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR ANY INTENDED OR PARTICULAR PURPOSE." ¶ 7.5.

- As to services, the Agreement provides that "[i]f Alcatel performs installation Services for any Product, then Alcatel shall perform those Services in a workmanlike manner and substantially in accordance with Alcatel's specifications therefor in effect on the date of completion." ¶ 6.1.

- "NOTWITHSTANDING ANY PROVISION OF THIS AGREEMENT TO THE CONTRARY, (A) NEITHER ALCATEL NOR ANY OF ALCATEL'S SUPPLIERS OR LICENSORS SHALL HAVE ANY LIABILITY TO PURCHASER FOR ANY CONSEQUENTIAL, INDIRECT, INCIDENTAL OR SPECIAL DAMAGES (INCLUDING, BUT NOT LIMITED TO, ANY LOST REVENUES OR PROFITS) ARISING OUT OF THIS AGREEMENT, AND (B) ALCATEL'S LIABILITY FOR ANY CLAIM ARISING OUT OF THIS AGREEMENT (OTHER THAN LIABILITY FOR PERSONAL INJURY CLAIMS) SHALL NOT EXCEED THE PURCHASE PRICE OF THE PRODUCT OR SERVICES THAT ARE THE SUBJECT OF SUCH CLAIM." ¶ 15.

- "Except as otherwise provided in this Agreement, no provision of this Agreement shall be modified, supplemented or waived except by a writing executed by the party to be . . . ." ¶ 18.8.

- The Agreement also states that it "shall be governed by and construed in accordance with the laws of the State of Texas." ¶ 18.11.

4

**Pine's Lawsuits and Damage Claims**

Pine brought this action in McCurtain County on September 15, 2011.[2] Pine filed a First Amended Complaint in this action on September 19, 2011, and that has been the operative pleading in this case since that time. (Dkt. No. 2).[3] In its First Amended Petition, Pine does not identify its causes of action by Count, but it can be fairly read to allege breach of the Supply Agreement for supplying defective goods (and services) which Pine claims to have rejected, an alternative claim for breach of warranty, and a claim for fraudulent inducement as to the 2008 purchases. (First Amended Petition, ¶¶ 3-31).

As to equipment defect, Pine alleges that the equipment did not work, asserts outages due to storms and the absence of surge protection, that the equipment for the damaged sites was replaced, after a delay, but did not work thereafter, and generally that the "equipment had failed of its essential purpose of allowing Pine to provide data communications to Pine's customers." (First Amended Petition, ¶ 12).

Pine also alleges that the 2008 purchases were fraudulently induced. (First Amended Petition, ¶¶ 24-31). Pine does not allege that the Supply Agreement entered into in 2005 was fraudulently induced. As to its fraudulent inducement claim, the First Amended Petition alleges

---

[2] Pine filed an earlier action in McCurtain County on February 3, 2011 but never served the Summons and Petition in that case. (Pine's Response, pp. 18-19, ¶¶ 56-57; *Pine Telephone v. Alcatel USA Marketing, Inc.,* Case No. CJ-11-20). The Petition in Case No. CJ-11-20 is substantively the same as the original Petition and the First Amended Petition filed in this case.

[3] On September 5, 2013, three months before discovery close and after the time for amendments had expired, Pine filed a Motion for Leave to File Second Amended Complaint. (Docket No. 117). In its Motion, Pine states that it is not adding any causes of action, (Motion, ¶¶ 1 and 4) but rather is only particularizing existing claims, and it then adds seven pages of additional allegations. (Second Amended Complaint, pp. 8-14, Dkt. No. 117). The Court finds that the proposed amendment is untimely and denies the Motion for Leave to File Second Amended Complaint. (Dkt. No. 117). However, the Court also finds that the amendment makes no difference to the outcome of this Motion because Pine states that its proposed amendment adds no new claims thus making the claims in the First Amended Petition operative, and all claims fail on the undisputed facts and law.

that Alcatel-Lucent claimed this proposal included all equipment and services needed to implement a network and represented to Pine that (1) Alcatel-Lucent's technology would outperform offerings by Alcatel-Lucent's competitors; (2) Alcatel-Lucent would provide Pine the advantage of offering better services to Pine's customers; (3) that Alcatel-Lucent's equipment would allow Pine to gain significant operational expense savings; (4) that Alcatel-Lucent understood Pine's goal to rapidly deploy a data communications network and could enable Pine to capture a large share of the wireless data and services market; and (5) that Alcatel-Lucent's equipment would provide reduced total cost of ownership, increased profitability, operational efficiency, enhanced quality of experience for Pine's customers, accelerated ability to introduce new services and improve Pine customer satisfaction due to Pine's ability to identify and resolve problems fasters.  (First Amended Petition ¶ 24; Pine's Response, p. 17, ¶ 47).

As to damages, Pine claims actual damages of "$19,861,327.64 [composed of price paid ($3,770,832.64), losses due to delay in ability to offer 3G high speed services ($15,555,070.00), wasted time of Pine employees ($472,800), and wasted cost of subcontracted tower work ($62,625)]." (Alcatel-Lucent's Motion, ¶ 32).

**Alcatel-Lucent's Motion for Summary Judgment**

Alcatel-Lucent filed this Motion for Summary Judgment on December 2, 2013. (Dkt. 166).  As to Pine's fraudulent inducement claim, in addition to alleging the pleading fails to meet the requirements of Rule 9(b), Alcatel-Lucent asserts that Pine cannot prove all of the elements of the cause of action because (a) as to the requirement for a misrepresentation of a current or past fact, the alleged statements were promises of future performance or statements of opinion which are not actionable, (b) Pine does not present evidence of falsity, (c) if false, Pine does not present evidence that the speaker knew it was false or acted recklessly in disregard of the truth,

(d) that the fraud allegations are too vague to sustain the cause of action and (e) Pine can prove no recoverable damages. In support, Alcatel-Lucent relies upon the allegations pled by Pine and points to testimony of Pine personnel, including acknowledgment that the alleged statements were of future performance, that the only evidence they have of falsity is that the promise turned out to be, in their opinion, false, and to the absence of evidence that any speaker knew a statement was false when made. (Alcatel-Lucent's Motion, pp. 10-16).[4]

Alcatel-Lucent argues that the breach of contract (Supply Agreement) and warranty claims fail as a matter of law because (a) Plaintiff has no proof the equipment or services were defective, (b) even if defective, the sole remedy is the return for replacement or repair of the nonconforming equipment, (c) Alcatel-Lucent replaced the equipment returned by Pine, and (d) even if Pine could prove failure to return defective equipment, its remedy is enforcement of the warranty, not return of the purchase price. In support of this argument, Alcatel-Lucent relies primarily upon the inability of Pine to come forward with any evidence of defect, but also points to testimony of Pine personnel where they do not identify a defect, but only allege the equipment did not work.  Alcatel-Lucent also points to Pine's later testimony and position that it has no obligation to prove any individual defect, but rather claims that it bought a network, the network does not work and Pine does not know why. (Alcatel-Lucent's Motion, pp. 20-21, Defendant Alcatel-Lucent USA, Inc.'s Reply in Support of Motion for Summary Judgment, pp. 7-10 ("Alcatel-Lucent's Reply")).

---

[4] Alcatel-Lucent also argues that even if the claim for fraudulent inducement could survive summary judgment as to the 2008 purchases, there is no allegation of fraud in 2005 when the parties entered into the Supply Agreement and therefore the limitation of damages provisions of the Supply Agreement control to limit Pine's damages to the warranty provision of the Agreement or, if inapplicable, at least to no more than the price paid for each piece of equipment that is found to be defective.

Alternatively Alcatel-Lucent relies upon the sole remedy language of the Supply Agreement to argue that Pine is limited in all of its claims to the return for repair/replacement remedy provision of the Agreement, and that Pine has admitted that Alcatel-Lucent replaced all equipment that was returned to it by Pine. (Alcatel-Lucent's Motion, p. 22-23; Alcatel-Lucent's Reply, p. 10).

Finally, Alcatel-Lucent argues that, if the claims are not dismissed in their entirety, Pine's damage claims must be limited first to the return and replace remedy provision, or second to the express limitation of liability provision of the Agreement which specifically excludes consequential and incidental damages, including lost profits, and limits any recovery to the amount paid for the non-conforming goods. Alcatel-Lucent also argues that the damage calculations in support of lost profit and consequential damages claims are unreliable and speculative, requiring exclusion and that therefore Pine's damage claims fail for lack of proof. (Alcatel-Lucent's Motion, pp. 16-20; 24).

### Pine's Response to Summary Judgment

In its response to Alcatel-Lucent's Motion for Summary Judgment, Pine claims that disputed questions of fact prevent summary judgment.  However, Pine admits to the facts as described in the background section above. Pine also includes 65 paragraphs identified as additional material facts. It argues and cites to only a handful of those facts in its Response and Surreply Briefs, and does not explain the materiality of the others to the summary judgment issues.  The Court is not required to comb the record for evidence to support Pine's claims. *See Cross v. The Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004), *citing Downes v. Beach*, 587 F.2d 469, 472 (10th Cir. 1978) ("[O]n a motion for summary judgment, 'it is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without ...

depending on the trial court to conduct its own search of the record."); *Mitchell v. City of Moore*, 218 F.3d 1190, 1199 (10th Cir. 2000) ("The district court was not obligated to comb the record in order to make [the plaintiff's] arguments for him.").

As to Pine's fraud claim, in addition to the claims from its First Amended Petition, Pine's Response points to a meeting in Jackson Hole, Wyoming in November 2008 in which Alcatel-Lucent provided Pine a demonstration of another UMTS network with Alcatel-Lucent equipment so that Pine could see how the technology performed (the "Edge Network.") (Pine's Response, p. 10, ¶ 7). At that meeting, Pine claims that Alcatel-Lucent advised Pine that it could expect better performance than the Edge Network, including better throughput and latency. *Id.* It also contends that Alcatel-Lucent performed advance testing at the demonstration site to generate and display misleading results without telling Pine about the advance testing. (Pine's Response, p. 9, ¶ 10). Pine alleges that Alcatel-Lucent made misrepresentations concerning its capability to quickly deploy a 3G network that would outperform the Edge Network and Pine's competitors, as well as its capacity to provide comprehensive technical support and return-for-repair services. (Pine's Response, p. 12, ¶¶ 16-18; p. 13, ¶¶ 20-21).

In its summary judgment briefing, though not pled in the First Amended Complaint, Pine alleges post-purchase fraud occurred during the course of the Project including the alleged delivery of used (rather than new) equipment, surreptitiously activating software to impose artificial data transmission speeds, and continuing to assure Pine that Alcatel-Lucent had the resources and expertise required to implement the network. (Pine's Response, pp. 11-12, ¶¶ 11-15; pp. 15-17, ¶¶ 38-46). Pine also alleges a fraudulent omission claiming that Alcatel-Lucent withheld information regarding equipment reliability, the testing procedures at the demonstration in Wyoming, availability of personnel and resources to support the Project, and services required

to deploy the network. (Pine's Response, pp. 10-11, ¶¶ 4-10; p. 13, ¶¶ 21-22, p. 14, ¶ 28-29; p. 15, ¶¶ 34-37).[5]

As to its particular arguments on defect, Pine refutes Alcatel-Lucent's statement of undisputed fact as to defect by citing generally, not to page, to the proffered expert report of Jonathan Reeves, to deposition testimony of three of its employees, and to internal emails of Alcatel Lucent. (Pine's Response, p. 7, ¶ 22). The Reeves Report is 13 pages long, and Pine does not cite to the particular opinion on which it relies. However, the Report repeats the broad statement that "It is my opinion that the ALU equipment purchased by Pine for use in the UMTS network was not functional, did not work for its intended purpose, and would have continued to result in outages for their customers had they deployed it commercially." (Reeves Report, ¶ 8, Ex. 6 to Pine's Response). The cited deposition testimony Pine offers is that the sites or the system were not working or that performance was inconsistent and not as expected. (Pine's Response, p. 7, ¶ 22). The internal Alcatel-Lucent emails are various emails reporting problems with the Pine project and troubleshooting issues. (*See e.g.* ALU0003436, ALU0003459, ALU0015780, Ex. 3 to Pine's Response).

## DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is proper where there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The movant carries the burden of establishing there are no genuine issues of material fact, but the movant may

---

[5] The allegations in Pine's Response are virtually identical to the factual allegations added in Pine's proposed Second Amended Complaint.

discharge its burden by showing there is an absence of evidence to support the non-movant's case, *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  Once the movant meets its burden, the burden shifts to the non-movant to demonstrate a genuine issue for trial on a material matter.  *Bacchus Indus., Inc. v. Arvin Indus*., *Inc.,* 939 F.2d 887, 891 (10th Cir. 1991).  In making its summary judgment determination, the court looks at the pleadings and documentary evidence in the light most favorable to the non-movant, *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir. 1991), and the movant must show beyond a reasonable doubt it is entitled to summary judgment, *Hicks v. City of Watonga, Okla.*, 942 F.2d 737, 743 (10th Cir.1991).

However, once the burden shifts to the non-movant, that party may not rest on its pleadings but must set forth specific facts showing there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.  *Celotex Corp.*, 477 U.S. at 324. "[A] complete failure of proof˙ concerning an essential element of the nonmoving party's case renders all other facts immaterial." *Celotex,* 477 U.S. at 323. Further, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the non-movant cannot make such a showing, after adequate time for discovery, summary judgment is mandated.  *Id.* at 322.

**B.     Fraud Claim**

The seriousness of every fraud allegation is evidenced by the requirement that it be pled with particularity, Fed. R. Civ. P. 9(b), and that it be proven by clear and convincing evidence. *Griffin v. Griffin*, 2004 OK CIV APP 58, ¶ 17, 94 P.3d 96, 100.  "'The mere fact that fraud is

claimed will not justify the submission of that issue [to the jury] unless facts are produced from which an *irresistible deduction of fraud reasonably arises*.'"   *Silk v. Phillips Petroleum Co.*, 1988 OK 93, ¶ 13, 760 P.2d 174, 176-77 (*quoting Johnson v. Caldwell*, 1937 OK 327, ¶ 15, 71 P.2d 620, 623). Fraud allegations may not survive on vague assertions and general statements. *See, e.g., Jensen v. America's Wholesale Lende*r, 425 Fed. App'x 761, 763-64 (10th Cir. 2011) (affirming determination that plaintiff failed to satisfy heightened pleading standard for fraud where allegations were broad, speculative, and non-specific).

        To establish fraud, Pine must prove by clear and convincing evidence that Alcatel-Lucent (1) made a material representation of a past or present fact; (2) that it was false; (3) that Alcatel-Lucent made the representation when it knew it was false, or made it as a positive assertion recklessly, without any knowledge of its truth; (4) that Alcatel-Lucent made it with the intention that it should be acted upon by Pine; (5) that Pine acted in reliance upon it; and (6) that Pine thereby suffered injury. *F.D.I.C. v. Hamilton*, 122 F.3d 854, 858 (10th Cir. 1997); *Silk*, 1988 OK 93, ¶ 12, 760 P.2d at 176.[6]

---

[6] Federal courts sitting in diversity follow the forum state's choice-of-law principles to determine which state's law governs the action. *BancOklahoma Mortgage Corp. v. Capital Title Co.*, *Inc.*, 194 F.3d 1089, 1103 (10th Cir. 1999).The parties appear to agree that Oklahoma law governs Pine's fraudulent inducement claim.  For claims of fraud and misrepresentation, Oklahoma courts apply "the most significant relationship test" set forth in Section 148 of the Restatement of Conflict of Laws, which calls for application of the state's law with the most significant relationship to the parties and transaction or occurrence at issue. *Ysbrand v. DaimlerChrysler Corp.*, 2003 OK 17, ¶ 17, 81 P.3d 618, 626.  The state where the alleged false representations were "made and received" and where "plaintiff's action in reliance took place" is presumed to have the most significant relationship to the parties and transaction or occurrence. *See* Restatement (Second) of Conflict of Laws § 148(1).  Because the representations alleged in Pine's Petition were received in Oklahoma, where Pine is incorporated and has its place of business (or Wyoming where a demonstration took place), Pine's alleged "action in reliance" took place in Oklahoma, and the equipment and services purchased were delivered and installed in Oklahoma, the greater weight of the factors indicates Oklahoma law applies to the fraud claim.

The first and most fundamental element of a fraud claim is a misrepresentation of a past or present fact. Generally, to constitute actionable fraud, false representations cannot be predicated upon a promise to perform in the future. *F.D.I.C. v. Hamilton*, 122 F.3d at 1527-28. To render nonperformance of a promise to be performed in the future fraudulent, the promise to perform must be "made with the intent to deceive the promisee into acting where he otherwise would not have done so" and be "accompanied by an intention not to perform." *Citation Co. Realtors, Inc. v. Lyon*, 1980 OK 68, ¶ 8, 610 P.2d 788, 790. "There is a wide distinction between the nonperformance of a promise and a promise made *mala fide*, only the latter being actionable fraud." *Id.* Eventual failure to perform is not evidence of intent not to do so. Thus, an allegation that a defendant intended to deceive because the alleged promise was not met is insufficient as a matter of law. *Roberts v. Wells Fargo AG Credit Corp.*, 990 F.2d 1169, 1173 (10th Cir. 1993).

Likewise, a claim of fraud cannot properly be based upon an expression of opinion. A statement made and reasonably understood as only an opinion or "puffing" does not constitute a false representation of a past or present fact. *Hall v. Edge,* 1989 OK 143, ¶ 11, 782 P.2d 122, 126; OUJI 18.10. This is particularly true of broad, general statements made by a seller about the value or quality of what he or she is selling. *Sam P. McCullough, Inc. v. Doggett*, 1936 OK 131, ¶ 13, 54 P.2d 184; OUJI 18.10.

Considering the facts in the light most favorable to the evidence offered by Pine, the Court finds that Pine does not come forward with sufficient evidence to meet these high standards, and no "irresistible deduction of fraud reasonably arises" on this record. *Silk,* 1988 OK 93, ¶ 13.

The Court first finds that the evidence offered in support of Plaintiff's fraud claims, with the limited exception of claimed omissions treated separately below, are statements of opinions

or promises of future performance, and not representations of past or present facts. These include the allegations that Alcatel-Lucent promised its equipment and technology would "outperform offerings" by competitors, "provide Pine the advantage of offering better service to Pine's customers" and "allow Pine to gain significant operational expense savings" and "capture a large share of the wireless data market" (First Amended Petition, ¶ 24); that Pine could expect better performance, including faster upload and download speeds (Pine's Response, p. 11, ¶ 10); that Alcatel-Lucent had (or would provide) a return and repair service, had comprehensive support and integration experience, would furnish manuals and training, quoted Pine everything needed to implement a network, and would devote technical support personnel to the project. (Pine's Response, p. 12, ¶ 16; p. 13, ¶ 21; p. 15, ¶ 34; p. 17, ¶¶ 47-48). The allegations and cited evidence cannot be construed to be anything more than promises to provide equipment, services, and levels of performance as the project was deployed in the future. Thus, these claims fail the first element of the cause of action – an affirmative statement of a past or present fact.

Pine's claimed misrepresentations also fail the falsity element of a fraudulent inducement claim as well because they relate to future performance, and therefore cannot have been false when made. Only if the speaker made the statement with the intent not to perform in the future can a future promise have been false when made. *Citation Co. Realtors*, 610 P.2d at 790; *Roberts*, 990 F.2d at 1173. Pine makes no such allegation and offers no such proof, stating only that the promises turned out not to be true. (Alcatel-Lucent's Motion, ¶¶ 25-26). Statements that turn out to be untrue do not prove falsity at the time the statements were made. *See Roberts*, 990 F.2d at 1173; *Gibson v. Weyerhaeuser Co.*, 35 Fed. App'x 834, 837 (10th Cir. 2002) (upholding district court's grant of summary judgment on fraud in the inducement claim where plaintiffs

failed to show that statements of future work were made with knowledge of falsity or that the statements were indeed false).

There is also no evidence sufficient to go to the jury as to the element of known falsity. Pine instead argues reckless disregard for the truth but offers no evidence of "irresistible deduction of fraud" as to recklessness.  "[T]o plead sufficient recklessness, a plaintiff must allege facts demonstrating highly unreasonable conduct that constitutes extreme departure from standards of ordinary care that the defendant either knew of the likelihood of the falsity [or] must have been aware of it."  26 Williston on Contracts § 69:26 (4th ed. 2009-2010).

This element is much of the focus of Pine's Surreply to Motion for Summary Judgment ("Pine's Surreply"). However, Pine's Surreply in Opposition contains further generalized arguments without evidentiary proof of knowledge or even conduct from which recklessness can be inferred.  Pine fails to provide either evidence establishing the standard of expected behavior, or evidence demonstrating deviation from that standard. Pine submits no evidence of actual knowledge, but argues Ms. Raskin knew or should have known of insufficient resources for the Pine project.[7] (Pine's Surreply, p. 2, ¶ 2). Pine attempts to tie Ms. Raskin to that knowledge by virtue of the fact she is a sales representative of the company and offers a "collective knowledge" argument. Such argument was raised for the first time in the Surreply and is not proper under Local Rule 7.1(k).  In any event, the Tenth Circuit has refused to apply the doctrine to common-law fraud actions.  *Woodmont, Inc. v. Daniels*, 274 F.2d 132, 137 (10th Cir. 1959) ("And while in some cases, a corporation may be held constructively responsible for the composite

---

[7] The Court also finds no evidence cited by Pine that the claimed lack of resources impacted the Pine project at all, thus negating the materiality requirement as well.

knowledge of all its agents, whether acting in unison or not, we are unwilling to apply the rule to fix liability where, as here, intent is an essential ingredient of tort liability for deceit.").[8]

Further, the cited emails in Pine's Surreply cannot be said to be evidence of a false representation that was or should have been known by Ms. Raskin when her alleged representations were made in 2008, because all of the cited emails post date those alleged representations by months or years. (*See* Alcatel-Lucent's Motion, ¶ 30). Thus, they are not proof of falsity at the time the claim was made. Nor does Pine establish how Raskin's failure to learn of and disclose post-purchase internal discussions about resources on UMTS projects, none of which Pine shows to have had any direct impact on Pine, is fraudulent conduct.

The Court therefore finds that there has been a "complete failure of proof" as to one or more of the essential elements of Pine's fraudulent inducement claim, rendering all other facts immaterial and causing the entirety of the claim to fail as a matter of law. *Celotex*, 477 U.S. at 323.

Beyond the fraudulent inducement claim pled by Pine in its First Amended Petition, Pine argues, in its summary judgment response, claims of post-purchase (common law) fraud and constructive fraud. Pine's alleged evidence of post-purchase fraud relates to the implementation of capacity licensing, the planned abandonment of UMTS support, and the providing of used instead of new equipment. (Pine's Response, pp. 11-12, ¶¶ 11-14; p. 13, ¶¶ 25-26; pp. 15-17, ¶¶ 38-46). Pine's alleged evidence of constructive fraud relates to the claimed omission of failure

---

[8]The theory is almost exclusively applied in the corporate criminal liability context. *See United States v. Bank of New England, N.A.*, 821 F.2d 844, 856 (1st Cir. 1987). The criminal case upon which Pine relies, *United States v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 1, 896-98 (D. D.C. 2006), was cast into doubt on appeal where the D.C. Circuit stated it was "dubious of the legal soundness of the 'collective intent theory,'" but declined to pass on the merits of the doctrine because it found the district court did not rely upon it to gauge specific intent necessary to prove guilt. *See United States v. Philip Morris USA, Inc.*, 566 F.3d 1095, 1122 (D.C. Cir. 2009).

rate information as to RRHs, and the failure to advise of having conducted test procedures in advance of the demonstration to Pine in Jackson Hole, Wyoming. (Pine's Response, p. 10, ¶¶ 4-6, 9). Alcatel-Lucent objected to the Court's consideration of this claim at all because not pled, and at a minimum not pled with particularity as required by Fed R. Civ. P. 9(b). The Court finds these objections are well taken.

In determining whether Pine met its burden of pleading fraud with particularity, the Court looks only to the text of the Petition, which must "'set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'" *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (*quoting Lawrence Nat'l Bank v. Edmonds*, 924 F.2d 176, 180 (10th Cir. 1991)). In addition to the elements of common law fraud, to recover for constructive fraud, Pine had to plead and prove (1) that Alcatel-Lucent owed Pine a legal duty; (2) that Alcatel-Lucent misstated a fact or failed to disclose a fact to Pine; (3) that Alcatel-Lucent's misstatement or omission was material; (4) that Pine relied on Alcatel-Lucent's material misstatement or omission; and (5) that Pine suffered damages as a result of Alcatel-Lucent's material misstatement or omission. *Lillard v. Stockton*, 267 F. Supp. 2d 1081, 1113 (N.D. Okla. 2003).

The Court finds that neither Pine's claim for post-purchase fraud, nor the claim of constructive fraud have been pled, and certainly have not been pled with the particularity required by Rule 9(b). Pine's First Amended Petition plainly pleads only fraudulent inducement and recites only facts that would apply to an inducement claim. As to post-purchase fraud, there is no allegation anywhere in the pleading as to time, place or substance of the alleged fraudulent conduct post-purchase, and certainly nothing that would put Alcatel-Lucent on notice of the existence of that claim.

Likewise Pine does not plead constructive fraud with particularity. The First Amended Petition does not plead a duty, does not plead an omission, and does not plead reliance. A new claim may not be raised for the first time on summary judgment. *Spencer v. Wal-Mart Stores, Inc.*, 203 Fed. App'x 193, 195-96 (10th Cir. 2006) (upholding district court's refusal to grant plaintiff's motion to amend complaint to raise a different theory of negligence first articulated in plaintiff's response to defendant's motion for summary judgment).

Pine's proposed Second Amended Complaint, even if allowed, would not save these claims.  In its Motion to File Second Amended Complaint, Pine asserts that it is not raising new claims, but only providing more particularity for those already pled. (Motion for Leave to File Seconded Amended Complaint, ¶ 1, Dkt. 117).  As the post-purchase fraud and constructive fraud claims are not pled in the First Amended Petition, they cannot have been added through the proposed Second Amended Complaint.

Setting aside Pine's failure to plead, both claims also fail based upon the undisputed evidence. As to the constructive fraud claim, Oklahoma has not recognized the tort of negligent misrepresentation or constructive fraud outside the field of banking or securities law.  *Qassas v. Daylight Donut Flour Co., LLC*, No. 09-CV-0663-CVE-PJC, 2010 WL 2365472, at *12 (N.D. Okla. June 10, 2010).  Pine has not cited contrary authority and has not urged any viable argument for a change in the law. Thus, the claim cannot proceed in this case involving the sale of goods and services.

Second, Pine has not come forward with evidence to create a genuine issue of fact for trial as to the claim. Pine has established no duty owed by Alcatel-Lucent to Pine to provide the information. While Pine has come forward with evidence that it asked about the failure rate of remote radio heads due to concerns about lightning strikes (Pine's Response, p. 10, ¶ 3-4), none

18

of its personnel could testify what they were told, if anything, about such failure rates and none could testify beyond anything other than speculation that they followed up on such inquiry. (*See* Alcatel-Lucent's Reply, pp. 4-5 and the deposition transcripts of Whisenhunt, Callaham and Brown attached as Exs. 2, 4 and 5 thereto). Further, the described information undisputedly relates to remote radio heads in South Korea with concerns as to humidity, and not to lightning strikes in Oklahoma. As a result, Pine has failed to establish materiality or reliance as well. *See Dobbs v. Wyeth Pharmaceuticals*, 848 F. Supp. 2d 1335, 1340-41 (W.D. Okla. 2012) (concluding that doctor did not rely upon allegedly false statements by pharmaceutical manufacturer that antidepressant medication would cure depression as required for fraudulent misrepresentation claim by patient's wife following patient's suicide where doctor testified she did not select the drug based on its alleged cure for depression, could not recall defendant's sales representative suggesting that the drug's remission rate was greater than that of other antidepressants, and did not review material given to her by the manufacturer in deciding to prescribe the drug).

As to the claimed failure to tell Pine that Alcatel-Lucent had performed testing in advance to select the best sites from which to demonstrate the equipment, and the claimed failure to advise of engineering problems with the system, the Court finds that Pine's conclusions from the emails are supposition unsupported by any facts. *See Faragalla v. Douglas County Sch., Dist. RE* 1, 411 Fed. App'x 140, 157 (10th Cir. 2011); *see also First Nat'l Bank & Trust Co. of Vinita v. Kissee*, 1993 OK 96, ¶ 8, 859 P.2d 502, 505 ("A party cannot merely rely upon conjecture or suppositions . . . because such is not sufficient to create a substantial controversy when the party moving for summary judgment has introduced evidence showing the existence of facts which would preclude recovery by the party against whom the motion was made."). In regard to the

alleged engineering issues, the only testimony offered concerns engineering issues which did not relate to the Alcatel-Lucent equipment (Alcatel-Lucent's Reply, p. 5, n.6). Finally, in regard to the testing, Alcatel-Lucent has submitted evidence from David Fritz as well as a PowerPoint prepared by Fritz which establishes that Pine was told the testing was done prior to the demonstration to Pine. (Alcatel-Lucent's Reply, p. 5). Pine does not refute that evidence.

The post-purchase fraud claim fails because Pine has not come forward with proof to satisfy each element of the claim. More specifically, like Pine's fraudulent inducement claim above, Pine's claims of implementation of capacity licensing, the intent to abandon UMTS support, and the claim of used equipment are at most, promises of future performance and Pine has offered no evidence that the person who is alleged to have made the underlying promise did not intend to perform (or knew it to be false). Further, as to the equipment allegation, there is no evidence any equipment was actually used, rather the emails support the fact that when problems were encountered with the identified items of equipment or component parts of equipment, Alcatel-Lucent raised questions internally to satisfy itself as to what was provided. (Pine's Response, p. 15, ¶¶ 38-46). Pine's supposition that the equipment was used is not sufficient evidence to go to a jury on a fraud claim. *See Kissee,* 1993 OK 96, ¶ 8.

For all of the above stated reasons, the Court finds that Pine fails as a matter of law to come forward with sufficient evidence to create a genuine issue for trial as to each element of its claim for fraudulent inducement. Further, the Court finds the claims for constructive fraud or post-purchase fraud are not pled, and finds the motion to amend futile as the pled allegations and the proof offered in opposition to summary judgment fail to raise a genuine issue of fact for trial. Thus, Alcatel-Lucent's Motion for Summary Judgment on fraud is GRANTED.

**C.**    <u>**Breach of Contract**</u>

**1.**    **Whether Pine has Come Forward with Sufficient Evidence of Defect**

Alcatel-Lucent also seeks summary judgment on Pine's breach of contract and breach of warranty claims. Alcatel-Lucent argues that both claims fail because Pine has not offered sufficient evidence to create a question of fact as to defect. Alcatel-Lucent alternatively argues that even if fact issues exist as to a defect, Pine's sole remedy is the return and repair or replace provision of the Supply Agreement, and that it has fully complied with that provision by replacing all equipment returned by Pine.

As an initial matter, because the Court has ruled in Alcatel-Lucent's favor as to the fraudulent inducement claim, the provisions of the Supply Agreement govern this dispute. Texas law controls claims arising under the Agreement,[9] and since the Agreement is predominantly for the sale of goods, Texas' version of Article 2 (Sales) of the Uniform Commercial Code, and cases interpreting it, serve as the governing law. *Westech Eng'g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 197 (Tex. App. 1992) (*citing* Tex. Bus. & Com. Code Ann. § 2.102).

While breach of contract and breach of warranty are generally separate and distinct claims under Texas law and the UCC,[10] proof of non-conformity is an essential element of both.

---

[9] Under Oklahoma choice-of-law principles, "'a contract will be governed by the laws of the state where the contract was entered into unless otherwise agreed and unless contrary to the law or public policy of the state where enforcement of the contract is sought.'" *Days Inns Worldwide v. Mandir, Inc.*, 393 F. Supp. 2d 1240, 1247 (W.D. Okla. 2005) (*quoting Williams v. Shearson Lehman Bros., Inc*. 1995 OK CIV APP 154, ¶ 14, 917 P.2d 998, 1002). The Agreement was executed in Texas and includes a choice-of-law clause providing that Texas law would govern. Therefore, Texas law applies to both Pine's breach of contract and breach of warranty claims.

[10] "The remedies for breach of contract are set forth in section 2.711, and are available to a buyer '[w]here the seller fails to make delivery.' . . . . The remedies for breach of warranty, however, are set forth in section 2.714, and are available to a buyer who has finally accepted goods, but discovers that the goods are defective in some manner." *Sw. Bell Telephone Co. v. FDP Corp.*, 811 S.W.2d 572, 576 (Tex. 1991) (*quoting* Tex. Bus. & Com. Code §§ 2.711(a) and cmt. 1, 2.714). Notably, here, Alcatel-Lucent urges that the warranty provisions of the Supply

*See* Tex. Bus. & Com. Code § 2.607(d) ("The burden is on the buyer to establish any breach with respect to the goods accepted"); Tex. Bus. & Com. Code § 2.601 (providing that a buyer may only reject goods if the goods or tender of delivery fail in any respect to conform to the contract). Therefore, to recover for breach of contract and breach of warranty, Pine has the burden of proving the equipment failed to conform to the Agreement. *Great Am. Prods. v. Permabond Int'l, a Div. of Nat'l Starch & Chem. Co.*, 94 S.W.3d 675, 681 (Tex. App. 2002) (noting that to recover for breach of warranty, the buyer must prove that the goods failed to comply with the affirmations of fact or promise set forth in the warranty); C.J.S. *Sales* § 312; 4 David Frisch, Lawrence's Anderson on the Uniform Commercial Code § 2-601:48 (2d ed. 1994-2014) (recognizing that the buyer bears the burden of proving the goods delivered failed to conform to the express or implied terms of the contract).

In the Agreement, Alcatel-Lucent warranted that, for a period of 12 months from equipment acceptance, the equipment and software shall, (a) under normal use and service, be free from defects in material and workmanship, and (b) materially conform to Alcatel-Lucent's specifications in effect on the date of shipment. *See* Agreement, ¶¶ 7.1, 7.2. Alcatel-Lucent argues that Pine has not come forward with such proof.

The Court must first consider what evidence is necessary to establish defect. "'Texas law does not generally recognize a product failure standing alone as proof of a product defect.'" *Omni USA, Inc. v. Parker-Hannifin Corp.*, --- F. Supp. 2d ----, 2013 WL 4063007, at *24 (S.D. Tex. Aug. 8, 2013) (*quoting Cooper Tire & Rubber Co. v. Mendez*, 204 S.W.3d 797, 807 (Tex. 2006)). "A conclusory statement of an expert witness is insufficient to create a question of fact to defeat summary judgment." *Id.* (*quoting McIntyre v. Ramirez*, 109 S.W.3d 741, 749 (Tex.

---

Agreement provide the remedy for both claims because the Agreement provides that the return and repair procedures are the sole remedy for non-conforming goods under the Agreement.

2003)); *see also Bro-Tech Corp. v. Purity Water Co. of San Antonio, Inc.*, 681 F. Supp. 2d 791,

795 n.3 (W.D. Tex. 2012) (noting that buyer "failed to raise a fact issue on the existence of a

defect because product failure alone is not proof of defect"); *Prompt Elec. Supply Co.*, *Inc. v.*

*Allen-Bradley, Co.* 492 F. Supp. 344, 347 (E.D.N.Y. 1980) (granting seller's motion for summary

judgment on a claim that goods were damaged or defective because the buyer's "wholly

unsubstantiated claim and bald assertion that the goods were damaged fail[ed] to raise a genuine

issue as to any material fact.").

The case of *Omni USA, Inc. v. Parker-Hannifin Corp.*, --- F. Supp. 2d ----, 2013 WL

4063007 (S.D. Tex. Aug. 8, 2013) is instructive.  In *Omni*, the buyer sued for breach of warranty,

claiming the seller manufactured and delivered defective oil seals used in gearboxes for

agricultural irrigation systems. *Id.* at *1, 8.  The buyer claimed the gearboxes were leaking oil in

the field because of a problem in design or manufacturing of the seals. *Id.* at *8.  In granting the

seller's motion for summary judgment, the court concluded that the buyer "fail[ed] to identify

and support with admissible evidence a defect or deficiency or shortcoming in the . . . seals that

caused the leakage, an essential element" of its claim for breach of warranty. *Id.* at *24.  The

buyer's corporate representative testified that he was not aware of any defects with the seals. *Id.*

at *9.  To prove defect, the buyer relied primarily upon its mechanical engineering expert's

opinion. *Id.*  The court reasoned the expert failed to identify a defect because he could not

pinpoint the probable source of the leak. *Id.* at *8.  He testified instead that the leaks could be

caused by a number of possible factors. *Id.*  The court recognized that under Texas law, "product

failure standing alone" is not proof of a product defect. *Id.* at *24.  Furthermore, "'[a]

conclusory statement of an expert witness is insufficient to create a question of fact to defeat

summary judgment.'" *Id.* (*quoting McIntyre v. Ramirez,* 109 S.W.3d 741, 749 (Tex. 2003).  The

buyer's conclusory statements of defect, without evidence of the cause of the alleged failures, were not enough to raise a genuine issue of material fact concerning defect. *Id.*

It is Alcatel-Lucent's position that Pine has provided only conclusory evidence the equipment did not work, without identifying any deficiency or shortcoming in the equipment. In response, Pine puts forward three categories of factual information which it claims is sufficient to raise a question for trial: statements from the report of proffered expert Jonathan Reeves, the testimony of Pine employees, and internal emails of Alcatel-Lucent. The Court finds this evidence does not rise beyond general claims of product failure or unspecified claims of problems which are insufficient as a matter of law. (Pine's Response, ¶ 22, p. 7, ¶¶ 39-44, pp. 16-17).[11]

Pine first cites to the report of its proffered expert Jonathan Reeves. In its Reply Brief, Alcatel-Lucent argued that Reeves's opinions were inadmissible and therefore should not be considered on summary judgment under Fed. R. Civ. P. 56(c)(2) because he was not timely identified as an expert in chief as stated in Alcatel-Lucent's Motion to Exclude Reeves (Dkt. 217). The expert disclosure and report deadline in this case was November 6, 2013. No report was provided by Mr. Reeves at that time. Instead, Plaintiffs submitted a report on the rebuttal deadline of December 6 which Alcatel-Lucent urges is comprised of almost entirely new opinions which were required to be provided on the November 6 deadline. Alcatel-Lucent also notes that Reeves' December 6th expert report fails to comply with Rule 26(a)(2)(B)(i-ii) in that Reeves did not include the basis and reasons for his opinions, much less the facts or data he considered in forming them. (*See* Def. Motion To Strike, Dkt. 217). The Court finds these

---

[11] Pine appears to assert in its Statement of Additional Material Facts that Alcatel-Lucent provided insufficient support and training services in breach of the Agreement but did not brief the issue in its Argument and Authorities section. The Court therefore finds Pine did not raise a genuine issue for trial for breach of the services portion of the Agreement.

arguments are well taken and that any affirmative testimony of Mr. Reeves is inadmissible under Rule 56(c). *See also Omni,* 2013 WL 4063007, at *24. However, even if Reeves' testimony were admissible, he does not analyze or explain the cause of any equipment defect or even purport to be qualified to do so. (*See* Reeves' Rpt, Ex. 6 to Pine's Response; Def. Motion to Exclude, Dkt. No. 215). As stated in *Omni*, *supra*, conclusory evidence of experts is not evidence of defect. *Id.* For all of these reasons, Mr. Reeves' opinion is not evidence of defect which raises a genuine material issue for trial.

In its opening and reply briefs, Alcatel-Lucent cited to the deposition testimony of Pine employees in which they failed to identify a defect in any piece of equipment and/or claimed that they bought a network and it did not work. (Alcatel-Lucent's Motion, Fact ¶ 22; Alcatel-Lucent's Reply, p. 2). In response, Pine attached additional testimony of Pine employees Whisenhunt, Brown and Shiro. The Court finds this testimony likewise does not constitute proof of defect. In the cited testimony, Mr Whisenhunt testifies there were storms, the sites quit working, and there were delays in equipment returns. (Ex. 8 to Pine's Response). Mr. Shiro testifies the sites did not consistently perform as expected, but provided no specifics as to a specific piece of equipment or problem. (Ex. 9 to Pine's Response). The testimony to which Pine cited for Mr. Brown does not address these issues. (Ex. 10 to Pine's Response).

In the Surreply, Pine attaches additional testimony from Mr. Whisenhunt's deposition and also from a separate deposition where Mr. Whisenhunt was proffered as a lay expert on various aspects of the project and argues that such testimony evidences clear defects in the "Alcatel UMTS Network." (Pine's Surreply at ¶ 1). The Court finds the cited testimony does not establish defect. The testimony relates to the return and repair of equipment and demonstrates no evidence of defect. (Ex. 1 to Pine's Surreply). In his lay expert deposition, Mr. Whisenhunt

testified he does not know if any of the RRH's were defective (*Id*. at 5), he never tested any of the equipment (*Id*. at 28), he does not know why any of the cell tower equipment allegedly failed (*Id*. 36-37), he does not have any documentation of how frequently cell tower equipment allegedly failed (*Id*. at 38-39), and that he did not know whether any particular hardware or software component was defective (*Id*. at 58).

The Alcatel-Lucent emails can be characterized as nothing more than internal discussions troubleshooting issues during the deployment of the Project. While some use language such as defective cards or failed equipment, they do not purport to be a finding that any piece of equipment was specifically defective or failed to conform to specifications. If component parts of the equipment - usually a card – quite working, the card was replaced and the equipment continued to work. A fair reading of the email shows that Alcatel-Lucent is trying to bring up the network and investigating issues as they arise.  As noted, supposition is insufficient evidence to defeat summary judgment. *See Kissee*, 1993 OK 96, ¶ 8.

Pine also asserts it is not obligated to prove defect as to each individual piece of equipment because it bought a network. Alcatel-Lucent argues that Pine does not create a disputed fact as to the purchase of a network. Alcatel-Lucent asserts that Pine rejected its proposal to deploy a turn-key network, and instead, chose to purchase only part of the offered equipment and services.  (Alcatel-Lucent's Motion, ¶ 11).  Pine cites to documents discussing the fact that Pine bought an end-to-end solution but does not establish or inform the Court as to how that changes its obligation to prove defect as to each good purchased. (Pine's Response, p. 6, ¶ 10; p. 9, ¶ 2). Further, Pine admits that it elected to self-install a part of the equipment. (Pine's Response, p. 6, ¶ 10). And, Pine sues for rejection of goods, relying upon its rejection letter. (First Amended Petition, ¶ 13; Ex. 10 to Alcatel-Lucent's Motion).  Pine's rejection letter did not

identify or reject a network; rather it specifically identified and rejected each piece of equipment purchased. (*Id.*) This is consistent with Pine's purchase orders which purchased individual pieces of equipment. Therefore, the Court finds Pine is obligated to prove defect as to each piece of equipment returned. The record is devoid of such proof.

Finally, even if the Court did not conclude Pine is obligated to prove defect as to each piece of equipment rejected, the Court further finds Pine has not established defect of the network as required by the above cited authorities. Pine's proof is only that the network did not work (Alcatel-Lucent's Motion, ¶ 22; Alcatel-Lucent's Reply, pp. 7-8).[12]   Pine's allegation the network did not function, when it is responsible for installation of certain equipment, fails to establish defect of a network. *See Omni,* 2013 WL 4063007, at *9 (no probability or conclusion of defect is established where other possible causes of failure exist).

As a matter of law, therefore, the Court holds that Pine's breach of contract and warranty claims do not present a question for trial because Pine has not established evidence of the essential element of defect.

### 2.   Alcatel-Lucent's Claim that the Sole Remedy is the Supply Agreement

Alcatel-Lucent argues alternatively that even if Pine were able to establish the equipment or network did not conform to contract specifications, its remedy is limited to repair and replacement of defective goods under ¶ 7.3 of the Agreement, which provides:

> 7.3    If any of the equipment is not as warranted in this Article, then (a) Purchaser shall obtain from Alcatel a Material Return Authorization ("MRA") and return the Equipment and MRA to Alcatel's designated repair facility, and (b) Alcatel shall repair or replace the Equipment and return it to Purchaser's point of shipment. . . . If, after the exercise of commercially reasonable efforts by Alcatel to repair or replace any Equipment or correct any Software, Alcatel determines

---

[12] Pine also failed to provide any evidence to show that Alcatel-Lucent had agreed to specific deadlines and that it was missing those deadlines, or make any argument as to breach separate from the claim of defect.

that the Product cannot be repaired, replaced or corrected, then Alcatel may, in its sole discretion, refund to Purchaser the Purchase Price of the Product, less a reasonable adjustment for beneficial use.

Agreement, ¶ 7.3.

The Agreement expressly provides that the remedy of ¶ 7.3 is exclusive:

7.5    NOTWITHSTANDING ANY PROVISION OF THIS AGREEMENT TO THE CONTRARY, THE PROVISIONS OF THIS ARTICLE CONSTITUTE PURCHASER'S SOLE REMEDY UNDER THIS AGREEMENT WITH RESPECT TO ANY DEFECTIVE PRODUCT, DOCUMENTATION OR SERVICES. EXCEPT AS OTHERWISE PROVIDED IN THIS ARTICLE, ALCATEL MAKES NO WARRANTY OF ANY KIND WITH RESPECT TO ANY PRODUCT, DOCUMENTATION OR SERVICES, AND ALCATEL DISCLAIMS ANY AND ALL IMPLIED WARRANTIES RELATING THERETO, INCLUDING, BUT NOT LIMITED TO, ANY AND ALL IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR ANY INTENDED OR PARTICULAR PURPOSE.

Agreement, ¶ 7.5 (emphasis original).

Texas law and the UCC honor contractual provisions, like ¶¶ 7.3 and 7.5 of the Agreement, which limit the measure of damages recoverable for the sale of goods to repair and replacement of non-conforming goods.  Tex. Bus. & Com. § 2.719(a)(2).  The parties' right to negotiate limited remedies parallels the basic contracts principle of freedom of contract, which is fundamental to the UCC.  *See* Tex. Bus. & Com. Code § 1.302(a), cmt. 1.  *Berge Helene Ltd. v. GE Oil & Gas, Inc.,* 830 F. Supp. 2d 235, 273 (S.D. Tex. 2011), *superseded in part on other grounds*, 896 F. Supp. 2d 582 (S.D. Tex. 2012).

As an initial matter, the Court notes Pine's Response Brief does not contest Alcatel-Lucent's position that the return and repair or replace provision of the Supply Agreement is Pine's sole remedy for all claims under the Agreement. Therefore, those facts and arguments are deemed admitted. Instead, Pine argues the failure of essential purpose exception of Tex. Bus. & Com. Code § 2.719(b). (Pine's Response, p. 29).

"[T]here are . . . 'relatively few situations where a remedy [such as the repair or replace provision] can fail of its essential purpose.'" *Riegel Power Corp. v. Voith Hydro*, 888 F.2d 1043, 1045 (4th Cir. 1989) (*quoting* 1 White & Summers, Uniform Commercial Code § 602 (3d ed. 1988)).  The most often relied upon argument that a remedy failed of its essential purpose, and the one relied upon by Pine here, is where the "seller is unwilling or unable to repair the defective goods within a reasonable period of time." *Berge Helene Ltd.,* 830 F. Supp. 2d 235 at 271.  The question of whether a remedy fails of its essential purpose can be one of law for the court.  *See Henderson v. Ford Motor Co.*, 547 S.W.2d 663, 669 (Tex. App. 1977); *Lankford v. Rogers Ford Sales*, 478 S.W.2d 248, 251 (Tex. App. 1972).

Pine does not dispute Alcatel-Lucent's statement that all equipment Pine returned to them was replaced.  (Pine's Response, p. 8, ¶ 24).  Where a party repairs and replaces all items as set forth in the agreement, the failure of essential purpose exception does not apply.  *See Fredonia Broadcasting Corp., Inc. v. RCA Corp.*, 481 F.2d 781, 798 (5th Cir. 1973), *overruled on other grounds*, *Riquelane Valdez v. Leisure Res. Group, Inc.,* 810 F.2d 1345 (5th Cir. 1987) (finding limited remedy did not fail of its essential purpose where the "facts clearly show[ed] that [Defendant] obeyed the limitation by repairing and replacing items which [Plaintiff] claim[ed] were defective"); *Lankford*, 478 S.W. 2d at 251 (concluding as a matter of law that limited remedy did not fail of its essential purpose where defects were repaired on each occasion; *Henderson*, 547 S.W.2d at 669 (same).

Pine's primary argument is that it bought a network which did not work, and does not fully analyze the timing of the return and replacement of the individual pieces of returned equipment. (Pine's Response, pp. 28-29).  Under Pine's theory, those individual returns are immaterial.  However, Pine does argue Alcatel-Lucent delayed too long in returning the

equipment. (Pine's Response, p. 13, ¶ 24). But, the undisputed facts reflect that Pine did not purchase a services level agreement which would have required parts to be returned immediately. Rather, the undisputed evidence is that the return time Pine selected was "best efforts" with a target of 60 days or 45 days (the actual period is in dispute). (Alcatel-Lucent's Motion, ¶ 12, Pine's Response, p. 7, ¶ 11). While Alcatel-Lucent did not meet those target dates on the first returns, it thereafter did meet target dates on all other returned equipment. (Ex. 11 to Alcatel-Lucent's Motion). Pine has not shown that these delays were material or unreasonable in the entire context of this project, nor is that the subject of its opposition.

Further, limited remedies are analyzed differently in commercial sales between sophisticated parties involving complex equipment like the present. In such cases, "'the repair or replacement clause may simply mean that the seller promises to use his best efforts to keep the goods in repair and in working condition and that the buyer must put up with the inconvenience and loss of down time.'" *Riegal Power Corp.*, 888 F.2d at 1046 (*quoting* 3 Hawkland, Uniform Commercial Code Series 447 (1984)). The Fifth Circuit has held that agreed-upon risks negotiated by sophisticated commercial entities like the parties here should not be disturbed, particularly where the transaction involves highly complex or innovative goods that are in some ways experimental. *See Employers Ins. of Wausau v. Suwannee River Spa Lines, Inc.*, 866 F.2d 752, 779 (5th Cir. 1989); *Riegel Power Corp.*, 888 F.2d at 1046. This Court refuses to disturb the agreed-upon allocation of risk. The Court finds that in the context of this commercial sale between two sophisticated parties, the period of time for return was not unreasonable and did not cause the remedy to fail of its essential purpose.

The undisputed evidence is that the only equipment returned by Pine is that stated on the chart attached by Alcatel-Lucent as Exhibit 11 to its Summary Judgment Brief. All such

30

equipment was returned to Pine pursuant to the contract.[13] (Alcatel-Lucent's Motion, ¶¶ 23-24). Therefore, the Supply Agreement remedies control and are satisfied as a matter of law. Pine has returned no other equipment and has proven no defect requiring replacement of goods. Therefore, Pine's breach of contract and breach of warranty claims fail as a matter of law under the sole remedy of the Agreement.

**D.   Damages**

**1.   The Supply Agreement Limitation of Damages Provision**

Alcatel-Lucent argues that under all scenarios alleged by Pine in any pleading, Pine may recover no more than the amount paid for the equipment under the contract. Alcatel-Lucent claims that Pine's request for lost profits, wasted time, wasted cost of subcontracted work, and punitive damages are all precluded expressly by the Supply Agreement.

The LIMITATION OF LIABILITY provision of the Agreement, prominently states:

> NOTWITHSTANDING ANY PROVISION OF THIS AGREEMENT TO THE CONTRARY, (A) NEITHER ALCATEL NOR ANY OF ALCATEL'S SUPPLIERS OR LICENSORS SHALL HAVE ANY LIABILITY TO PURCHASER FOR ANY CONSEQUENTIAL, INDIRECT, INCIDENTAL OR SPECIAL DAMAGES (INCLUDING, BUT NOT LIMITED TO, ANY LOST REVENUES OR PROFITS) ARISING OUT OF THIS AGREEMENT, AND (B) ALCATEL'S LIABILITY FOR ANY CLAIM ARISING OUT OF THIS AGREEMENT (OTHER THAN LIABILITY FOR PERSONAL INJURY CLAIMS) SHALL NOT EXCEED THE PURCHASE PRICE OF THE PRODUCT OR SERVICES THAT ARE THE SUBJECT OF SUCH CLAIM.

---

[13] Alcatel-Lucent acknowledges that two pieces of equipment were still outstanding because they were returned approximately 30 days before Pine tendered the equipment back to Alcatel-Lucent. (Alcatel-Lucent's Motion, ¶ 24). Alcatel-Lucent had no obligation under those circumstances to return the equipment to Pine as it had been rejected with the rest. Pine makes no argument to the contrary.

Under Texas law and the UCC, incidental and consequential damages may be so limited or excluded. Tex. Bus. & Com. Code § 2.719(c); *Morgan Bldgs. & Spas, Inc. v. Humane Soc'y of Se. Tex.,* 249 S.W.3d 480, 491-92 (Tex. App. 2008).[14]

The Court has found the fraud claim fails as a matter of law,[15] and the Agreement's Limitation of Liability provision governs and precludes Pine's claim for lost profits, wasted time and expense, and punitive damages.

---

[14] Pine argues for the first time in its Surreply, by incorporating by reference its Response to Alcatel-Lucent's Motion in Limine #10, that the limitation of liability provision in the Supply Agreement is unenforceable because (1) it is unconscionable, and (2) the failure of essential purpose of the return and repair remedy renders the limitation of liability provision void. (Response to Motion in Limine #10 at 2.) The Court declines to address these arguments because this is an impermissible use of a surreply brief. *See* LCvR 7.1(k); *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1164 (10th Cir. 1998); *Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005). These arguments do not respond to new matter in Alcatel-Lucent's Reply. Pine should have raised the arguments in its Response to Motion for Summary Judgment.

Still, the Court finds that the limitation of liability is not unconscionable. "Where the transaction is commercial and between sophisticated parties, courts are especially likely to enforce liability limits for consequential damages." *Berge Helene Ltd. v. GE Oil & Gas, Inc.*, 830 F. Supp. 2d 235, 274 (S.D. Tex. 2011). This rule applies in this case. Pine's argument that it will be left without a remedy if the repair and replacement remedy fails of its essential purpose is incorrect. Available remedies in that event are the price paid under the contract pursuant to Tex. Bus. & Com. Code § 2.711 for breach of contract or the difference in the value of the goods as warranted and received under § 2.714 for breach of warranty, subject to other applicable agreements of the parties.

Further, the Court agrees with the great weight of authority that, in cases involving commercial contracts between sophisticated parties, where a limited remedy fails of its essential purpose, such a failure does not invalidate a separate provision in an agreement excluding liability for consequential damages. *See Employers Ins. of Wausau v. Suwannee River Spa Lines, Inc.*, 866 F.2d 752, 778 (5th Cir. 1989); *McNally Wellman Co. v. N.Y. State Elec. & Gas Corp.*, 63 F.3d 1188, 1197 (2d Cir. 1995); *S.M Wilson & Co. v. Smith Int'l, Inc.*, 587 F.2d 1363, 1375 (9th Cir. 1978); *Electro-Matic Prods., Inc. v. Prime Computers, Inc.*, No. 88-1790, 1989 WL 99044 (6th Cir. Aug. 28, 1989); *Eastman Chemical Co. v. Niro, Inc.*, 80 F. Supp. 2d 712, 721-22 (S.D. Tex. 2000); *Ritchie Enters. v. Honeywell Bull, Inc.*, 730 F. Supp. 1041, 1049 (D. Kan. 1990).

[15] Even if evidence of all elements of the fraudulent inducement claim existed sufficient to create a question of fact for the jury, the limitation of liability provision would control to limit those damages. The alleged fraudulent inducement occurred in 2008 and the limitation of liability provision was entered into in 2005. There is no allegation of fraudulent inducement in 2005.

## CONCLUSION

Based on the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED this 29th day of January, 2014.

James H. Payne
United States District Judge
Eastern District of Oklahoma